

**SIGNED this 30 day of April, 2008.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re

    LIBERTY FIBERS CORPORATION            No. 05-53874
    f/k/a Silva Acquisition Corporation,        Chapter 7

                     Debtor.

### M E M O R A N D U M

APPEARANCES:

    Mark S. Dessauer, Esq.            Maurice K. Guinn, Esq.
    Hunter, Smith & Davis, LLP        Gentry, Tipton & McLemore, PC
    Post Office Box 3740              900 South Gay Street, Suite 2300
    Kingsport, Tennessee 37664        Knoxville, Tennessee 37902
    *Attorney for MPLG, LLC*           *Attorney for Maurice K. Guinn, Trustee*

    **Marcia Phillips Parsons, United States Bankruptcy Judge**.  This chapter 7 case is before the court on a motion by MPLG, LLC ("MPLG") to vacate the order entered January 30, 2008, denying MPLG's request for payment of administrative expenses.  MPLG contends that its inadvertent failure to include a letter from the chapter 7 trustee in the evidence it previously submitted provides sufficient grounds under Rules 59(e) and 60(b)(1) of the Federal Rules of Civil Procedure to vacate the court's prior order and reopen the matter for an evidentiary hearing.  For the

reasons discussed hereafter, MPLG's motion will be denied.  This is a core proceeding.  *See* 28
U.S.C. § 157(b)(2)(A) and (B).

I.

The debtor Liberty Fibers Corporation ("Debtor") filed for bankruptcy relief under chapter
11 on September 29, 2005.  An order converting the case to chapter 7 was entered shortly thereafter
on November 21, 2005.  Maurice Guinn was appointed chapter 7 trustee ("Trustee").  On September
21, 2006, the Trustee sold certain equipment of the estate to A & E Salvage, Inc. ("A & E") for
salvaging for the purchase price of $3 million.  Pursuant to the agreement of the parties, A & E
would have approximately two years to dismantle and remove all purchased equipment from the
estate's real property located in Lowland, Tennessee, with the cost of removing the assets to be
borne by A & E as purchaser.  In a separate agreement, the Trustee granted A & E an option to
purchase the real property upon which the salvaging operations were to take place.

In March 2007, the Trustee sold the estate's waste water treatment plant and related facilities
("WWTP") to MPLG, which is currently operating the plant on property adjoining the estate's real
property.  In connection with its dismantling operations, A & E brings city water onto estate
property.  The resulting waste water flows through a series of sewers located on the estate's real
property to MPLG's WWTP where it is treated and then discharged into the Nolichucky River.
MPLG made demand on A & E to pay for the waste water treatment services or cease sending waste
water to the WWTP for treatment but A & E refused.[1]  As such, MPLG filed in this bankruptcy case
on June 28, 2007, a request for payment of administrative expenses pursuant to 11 U.S.C.
§ 503(b)(1)(A), contending that the bankruptcy estate was responsible for the cost of waste water
treatment services MPLG has provided to A & E.

At a hearing on August 14, 2007, counsel for the Trustee and MPLG advised the court that

---

[1] On November 28, 2007, after an extended hearing in an adversary proceeding brought by
the Trustee and MPLG against A & E and another defendant, this court entered an order enjoining
A & E from sending waste water to MPLG's WWTP pending trial or pending arrangement for
payment to MPLG.  MPLG's claim for administrative expenses concerns the services provided to
A & E prior to the injunction going into effect.

2

there were no facts in dispute and the parties would file stipulations of facts upon which the issue could be decided.  Thereafter, the parties filed a Joint Statement of Issues and Stipulations of Fact, which included the stipulation that "[t]here is no feasible way to stop the flow of water from the facilities . . . controlled by A & E without interrupting the flow of water from other users of the WWTP."  (¶ 35.)  After taking the matter under advisement, this court issued a memorandum opinion and order on January 30, 2008, denying MPLG's request for payment of administrative expenses.  *In re Liberty Fibers Corp.*, 383 B.R. 713 (Bankr. E.D. Tenn. 2008).

The court noted in its memorandum opinion that § 503(B)(1)(A) of the Bankruptcy Code provides for the allowance of administrative expenses including the "actual, necessary costs and expenses of preserving the estate."  In order to qualify as an "actual and necessary" expense, a debt must (1) arise from a transaction with the bankruptcy estate; and (2) directly and substantially benefit the estate.  *See In re Sunarhauserman, Inc.*, 126 F. 3d 811, 816 (6th Cir. 1997).  In denying MPLG's request for administrative expenses, this court concluded that it had met neither element of this test, commonly referred to as the "benefit of the estate" test.

As to the first requirement, the court concluded that the waste water treatment services provided by MPLG to A & E was not a transaction with the bankruptcy estate.  The court rejected MPLG's argument that the required nexus with the estate was satisfied by the fact that A & E was utilizing the services of the WWTP in order to perform under its purchase agreement with the estate.  The purchase agreement did not require A & E to use water in its dismantling process or otherwise utilize the services of the WWTP, and the parties had expressly stipulated that "A & E had no need of water in its salvaging operations."  (¶ 31.)  The court also concluded that the fact that A & E's waste water entered the WWTP from sewer lines on the estate's property was not determinative because the estate did not produce the waste water; there was no evidence that the Trustee requested A & E to generate the waste water or that A & E was producing the waste water on the estate's behalf.

Regarding the second element of the benefit of the estate test, this court found no direct and substantial benefit to the estate from the services provided by MPLG to A & E.  The purchase agreement between the estate and A & E unequivocally stated that A & E was to bear the cost of

3

removing the purchased assets. While undeniably there was some value to the estate because A & E's waste water was being treated rather than remaining on estate property, the court concluded that such benefit was speculative at best.

On February 11, 2008, MPLG filed the motion that is presently before the court, requesting that the court vacate its January 30, 2008 order and set the administrative expense request for an evidentiary hearing in light of a July 9, 2007 letter from the Trustee to MPLG's counsel in this matter, Mark S. Dessauer. The Trustee's letter states as follows:

> **Re:    Liberty Fibers Corporation**
> **Bankr. Case No. 05-53874**

Dear Mark:

Tom Montgomery told me this afternoon that Michael Ball has advised him that Mr. Ball will plug a sewer line from the estate property tomorrow morning. The foreseeable result is back-flow with damage to property of the estate and probable environmental damage. I am strongly opposed to Mr. Ball plugging the sewer line. If he does so and damages property of the estate, it will be my responsibility to recover from any entity or person responsible for the damage. I would consider Mr. Ball individually responsible as opposed to MPLG if he pursues his plan to plug the sewer line.

I do not think it is wise for Mr. Ball to take this action pending the decision of the Bankruptcy Court in the adversary proceeding on the motion for injunctive relief. Additionally, has Mr. Ball considered how TDEC will view his plugging of the sewer in connection with any future permit application? Mr. Ball should assume TDEC representatives will know about his plugging the sewer line if he proceeds with his plan.

Sincerely,

*/s/ Maurice K. Guinn*
Maurice K. Guinn

MPLG's motion is supported by Mr. Dessauer's affidavit, wherein he states that his failure to include this letter as part of the evidence when MPLG's request was originally considered was due to his inadvertence or excusable neglect. Mr. Desssuer states that prior to the court's ruling:

I did not realize that the Trustee's July 9, 2007 letter might have relevance to MPLG's administrative expense claim relative to A & E's use of the [WWTP]. This is because, in my view, there always seemed to be a nexus between A & E's salvaging operations, waste water treatment services provided by MPLG and the

4

interests of the bankruptcy estate.

MPLG argues that the Trustee's letter establishes or arguably creates disputed factual issues as to both elements of the benefit of the estate test.  The Trustee has filed a response opposing MPLG's motion.

## II.

MPLG's motion to vacate is premised on a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9023.  The Sixth Circuit Court of Appeals has explained that a court should grant a motion to alter or amend judgment only if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters Co.,* 178 F.3d 804, 834 (6th Cir. 1999).

In the present case, MPLG appropriately realizes that the July 9, 2007 letter from the Trustee is not "newly discovered evidence."  *See Id.* at 834 ("To constitute "newly discovered evidence," the evidence must have been previously unavailable.").  Rather, MPLG argues that reconsideration of the court's earlier ruling is necessary "to prevent manifest injustice."  According to MPLG, the Trustee's letter contradicts the Trustee's previous assertions that he never requested MPLG to treat A & E's waste water or that treatment does not benefit the estate.  MPLG argues that the Trustee's "inconsistent position . . . places MPLG in the position of having to provide A & E with waste water treatment services, in order to protect the interests of the bankruptcy estate, with no assurance of payment . . . ."

However, Rule 59(e) is not a means to overcome a party's failure to litigate matters fully and cannot be used to present arguments and evidence that could have been presented earlier.  *In re Webb Mtn, LLC*, No. 07-32016, 2007 WL 3125095, at *3 (Bankr. E.D. Tenn. 2007) (citations omitted).  "[C]onsideration of a motion under Rule 59(e) does not allow the party to reargue its case." *Id.* (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)).  Accordingly, MPLG's motion will be denied to the extent that it seeks relief under Rule 59(e).

5

Alternatively, MPLG seeks relief under Federal Rule of Civil Procedure 60(b)(1), made applicable by Federal Rule of Bankruptcy Procedure 9024, which permits the trial court to relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1); *Jinks v. Allied Signal, Inc.*, 250 F.3d 381, 385 (6th Cir. 2001). The Sixth Circuit uses a three-factor test to determine if relief is warranted under Rule 60(b)(1). *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003).

> In deciding whether relief is warranted, three factors are relevant: (1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense. [*United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983)]. Culpability is "framed" by the specific language of the rule; i.e., a party demonstrates a lack of culpability by demonstrating "mistake, inadvertence, surprise, or excusable neglect." *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992). And because Rule 60(b)(1) "mandates" such a demonstration, "[i]t is only when the [party seeking relief] can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the [other party]." *Id.; see also Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 794 (6th Cir. 2002) (a party seeking relief "must demonstrate first and foremost that the default did not result from his culpable conduct").

*Id.*

MPLG asserts that its failure to include the Trustee's letter as part of the evidence when this matter was originally considered by the court was due to its counsel's inadvertence or neglect. Neglect includes "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Jinks v. Allied Signal, Inc.*, 250 F.3d at 386 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 113 S. Ct. 1489 (1993)). "[W]hether the 'neglect' was excusable involves an equitable determination that takes into account (1) the danger of prejudice to the other party, (2) the length of the delay, (3) its potential impact on judicial proceedings, (4) the reason for the delay, and (5) whether the movant acted in good faith." *Id.*

There is no evidence that granting relief to MPLG under Rule 60(b)(1) would prejudice the Trustee or the estate. Additionally, the length of the delay in bringing the letter to the court's

6

attention was minimal (less than two weeks after the court's order).  Likewise, there is no evidence that granting relief under Rule 60(b)(1) would have a negative impact on the judicial proceedings, and there is no evidence of bad faith on the part of MPLG's counsel.  Nonetheless, counsel's apparently conscious decision to refrain from submitting the letter previously does not appear to be the type of neglect covered by Rule 60. "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *In re Salem Mortgage Co.*, 791 F.2d 456, 459 (6th Cir. 1986) (quoting *Federal's Inc. v. Edmonton Inv. Co.*, 555 F.2d 577, 583 (6th Cir. 1977)).  Further, Rule 60 "does not provide relief simply because litigants belatedly present new facts or arguments after the . . . court has made its final ruling." *Jinks v. Allied Signal, Inc.*, 250 F.3d at 387 (citing *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 29 (1st Cir. 1980)).

Even if this court were to find excusable neglect, the more problematic hurdle for MPLG to overcome is whether it is presenting a meritorious claim.  A claim or defense is "meritorious" if there is some possibility that the outcome of the case will be contrary to the result previously achieved. *Williams v. Meyer*, 346 F.3d at 614 (citations omitted).  The test is whether the claim is "good at law," not "likelihood of success," and ambiguous or disputed facts should be construed in the light most favorable to the party opposing relief. *Id.* (citations omitted).  There is no requirement that the court permit relief under Rule 60(b)(1) where the newly submitted evidence will have no impact on the outcome of the case. *See Jinks v. Allied Signal, Inc.*, 250 F.3d at 388 (Court denied relief under Rule 60(b) where belated arguments would have failed to establish a case even if they had been timely raised); *In re Southern Indus. Banking Corp.*, 189 B.R. 697, 703 (Bankr. E.D. Tenn. 1992) (Bankruptcy court did not abuse its discretion by not admitting newly discovered evidence under Fed. R. Civ. P. 60(b) where the evidence would not have changed the outcome of the case).

Consideration of the Trustee's letter in the context of the parties' previously submitted stipulations does not alter this court's conclusion that MPLG's administrative expense claim does not satisfy the "benefit of the estate" test.  Contrary to MPLG's assertion, the letter does not evidence that the waste water treatment services provided by MPLG to A & E arose out of a transaction between MPLG and the estate or that the Trustee induced MPLG to treat A & E's waste water. *See In re United Trucking Serv., Inc.*, 851 F. 2d 159, 161-62 (6th Cir. 1988) (as alternative

7

to proving that debt arose from a transaction with the estate, claimant may establish that the claimant gave consideration to the estate that was induced by the estate).   As previously noted, one of the parties' stipulations was that "[t]here is no feasible way to stop the flow of water from the facilities . . . controlled by A & E without interrupting the flow of water from other users of the WWTP."  The parties also stipulated that other users of the WWTP include the Trustee on behalf of the estate, who has been paying for the services provided to the estate without objection; and that "[i]f contaminants from A & E salvage operations are backed up and kept on the estate property that should be sent to the WWTP, an immediate threat could be created."  The Trustee's July 9, 2007 letter, which points out that plugging a sewer line from the estate property would cause damage to property of the estate and the Trustee's opposition to such action, is simply a reiteration of the stipulations previously considered by the court, rather than an inducement by the Trustee that MPLG perform on its behalf by treating A & E's waste water.[2]

Similarly, the Trustee's letter does not present new evidence that MPLG's treatment of A & E's waste water provides a direct and substantial benefit to the estate.  The court previously considered the parties' stipulation that an immediate threat could be created if contaminants from A & E's salvage operations were backed up and kept on the estate property, but concluded that this indirect benefit did not meet the "necessary directness and substantiality required by the Code."  *In re Liberty Fibers Corp.*, 383 B.R. at 719.  All that the Trustee's letter adds to this discussion is the statement that there will be "probable environmental damage" if the sewer line is plugged.  While this statement does give more specificity to the previous "immediate threat" stipulation, it nonetheless fails to provide the directness and substantiality required for the allowance of administrative expenses.

---

[2] The court also notes that the stipulations establish that prior to the sale of the WWTP to MPLG, the Trustee operated the plant and provided waste water treatment services to A & E, and that similarly A & E refused to pay the Trustee for these services.  There is no indication that this fact was not known to MPLG at the time of its purchase of the WWTP.  If MPLG believed that the estate was responsible for waste water treatment services provided to A & E, there appears to be no reason why this matter could not have been addressed in the purchase agreement between the Trustee and MPLG or in the Memorandum of Understanding through which MPLG assumed operation of the WWTP pursuant to the terms of the estate's NPDES Permit.

### III.

Because consideration of the Trustee's July 9, 2007 letter does not change the outcome of the previous denial of MPLG's claim for administrative expense, MPLG's motion to vacate does not satisfy the meritoriousness requirement of Rule 60(b)(1).  An order will be entered in accordance with the foregoing, denying MPLG's "Motion to Vacate Order and Reopen Matter for Evidentiary Hearing."

# # #